## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN SCOTT,

               Plaintiff,                 CASE NO. 16-13734
                                       HON. DENISE PAGE HOOD

v.

TROTT LAW, P.C.,

               Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / DISMISSAL [#18], AND MOOTING MOTIONS [#4; #34; #35; #36; #42; #45; #46; #51]

## I.    BACKGROUND

### A.    Procedural Background

On October 20, 2016, Plaintiff Kevin Scott ("Scott") filed a *pro se* Complaint against Defendant Trott Law, P.C. ("Trott") alleging Violation of the Fair Debt Collection Practices Act (Count 1), Violation of the Real Estate Settlement Procedures Act (Count 2), Unreasonable Collection Efforts under M.C.L. § 339.918(e)(2) (Count 3), Fraud and Misrepresentation (Count 4), Intentional Infliction of Emotional Distress (Count 5), and Violation of Civil Rights under 42 U.S.C. § 1981 (Count 6).[1]  (Doc # 1)

---

[1] Scott previously sued Bank of America, Trott & Trott, and BAC Home Loan Servicing in relation to foreclosure proceedings on the same real property.  Scott identified Case No. 12-12864 as a possible companion case before Judge David M. Lawson.  Judge Lawson determined

On October 25, 2016, Scott filed a Motion for Temporary Injunction. (Doc # 4) On November 4, 2016, Trott filed a Response. (Doc # 9) The Court held a hearing on the Motion on November 7, 2016 during which both Scott and Trott indicated that Scott had filed for bankruptcy, yet no notice of a bankruptcy had been filed on this Court's docket. At the hearing, Trott also acknowledged that it had not yet received validation of Scott's debt from its client, Bank of America, N.A. ("BANA"), in response to Scott's dispute. The Court entered an Order Staying Hearing on Plaintiff's Motion for Temporary Injunction. (Doc # 10)

On January 26, 2017, Trott filed the instant Motion for Summary Judgment / Dismissal. (Doc # 18) On March 6, 2017, Scott filed a Response. (Doc # 33) The Court held a motion hearing on April 19, 2017. Additionally, the parties have filed a number of discovery-related motions: Motion to Quash Subpoena by Scott (Doc # 34, filed March 7, 2017); Second Motion to Compel Discovery / Enforce Order and for Sanctions by Trott (Doc # 35, filed March 13, 2017); Motion to Extend Discovery by Scott (Doc # 36, filed March 13, 2017); Motion to Compel by Scott (Doc # 42, filed March 27, 2017); Motion for Failure to Cooperate and Answer Subpoena by Scott (Doc # 45, filed March 27, 207); Motion for Permission of Joiner of Parties by Scott (Doc # 46, filed March 27, 2017); and Motion to Strike

that the present case does not qualify as a companion matter.

Plaintiff's Motion for Joiner [sic] of Parties by Trott (Doc # 51, filed April 10, 2017).

## B.      Factual Background

Scott filed this action arising from ongoing proceedings to foreclose the Mortgage, dated April 26, 2004, on his residence in Farmington Hills, Michigan. On September 27, 2016, Trott initiated a foreclosure by advertisement by sending a Fair Debt Letter to Scott stating the amount of the Debt.  The letter indicates that Trott is a debt collector attempting to collect a debt, that Trott represents BANA, and that this matter was referred to Trott to foreclose Scott's Mortgage.  (Doc # 1, Pg ID 30)  The letter identifies Fannie Mae as the owner of the debt and BANA as the servicer of the debt.  *Id.*  The letter indicates that BANA has elected to accelerate the total indebtedness due and owing under the Mortgage, $180,131.05. *Id.*  The letter breaks down the total amount due and owing, indicating amounts owed for principal balance, unpaid interest, late charges, allowable advances, less escrow balance, escrow advance, and NSF fees.  *Id.*  The letter further states:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt, this office will obtain verification of the debt or a copy of the judgment, if applicable, and mail a copy of such verification or judgment to you. If you request, in writing, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.  *Id.*

Trott sent another letter to Scott on October 7, 2016. *Id.* at 32. This letter notifies Scott that, under the power of sale contained in the Mortgage, the Mortgage will be foreclosed by a sale of the mortgaged premises on November 8, 2016. *Id.* The letter also states that the redemption period shall be 12 months from the date of the sale, unless determined abandoned, in which case the redemption period shall be 30 days from the date of the sale. *Id.*

On October 8, 2016, Scott sent a certified letter to Trott disputing the validity of the debt and claiming that he provided certain checks, each in the amount of $2,888.98, to attorneys at Maddin Hauser representing BANA in his previous action, Case No. 12-12864. *Id.* at 34. An Affidavit of Scott also indicates that these attorneys were given checks to be given to BANA in the amount of $2,888.98, and that "all of the missing checks were given to the Attorneys." The Affidavit does not specify how many alleged missing checks there are. *Id.* at 40-41. Scott asserts that despite his notice of dispute, Trott has failed to verify the debt. *Id.* at 10.

According to the Complaint, BANA misrepresented the total amount due as $115,946.31 in September 2016. *Id.* at 10. Scott asserts that he only owes approximately $65,995.52. *Id.* The Complaint alleges that Scott is "current" because all checks were given to attorneys at Maddin Hauser, and that Trott

refused to verify the debt. The Complaint further alleges that Trott fraudulently initiated the foreclosure process.

On October 5, 2016, Maddin Hauser sent a letter to Scott in response to various e-mails from Scott. *Id.* at 36. Maddin Hauser's letter indicates that Maddin Hauser is no longer involved in this matter and that "[a]ny and all checks that my office received from you were either returned to you or forwarded on to our client." *Id.* Maddin Hauser sent a second letter to Scott on October 6, 2016 indicating that they did not represent him and that they have no additional personal knowledge regarding the location of his checks. *Id.* at 38.

After commencement of this action, the foreclosure sale of the mortgaged premises scheduled for November 8, 2016 was canceled. Trott asserts that it ceased collection activities upon receipt of Scott's dispute letter on or about October 11, 2016.

## II. TROTT'S MOTION FOR SUMMARY JUDGMENT / DISMISSAL

### A. Standard of Review

#### *1. Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## 2.    *Motion for Summary Judgment*

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id*. at 248.  A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party.  *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  "Conclusory allegations do not create a genuine issue of material fact which precludes summary

judgment." *Johari v. Big Easy Restaurants, Inc*., 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc*., 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 3.     *Pro Se Litigants*

Federal courts hold *pro se* complaints to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *pro se* litigants are not excused from failing to follow basic procedural requirements. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). A *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984).

**B.      Violation of the Fair Debt Collection Practices Act (Count 1)**

Scott first alleges that Trott violated the Fair Debt Collection Practices Act ("FDCPA") in misrepresenting the amount of the debt and failing to validate the debt after he notified Trott of the dispute.  Scott argues that Trott was required to verify the debt because Trott did not cease its collection activities after receiving Scott's dispute letter, listing Scott's home in the newspaper on October 14, 21, and 28, 2016.

Trott argues that the FDCPA claim should be dismissed because Trott ceased all collection activities and was thereafter not required to verify the debt. Trott further argues that it ordered the publication of Scott's home prior to its receipt of Scott's dispute letter, and Trott was not required to take any positive step with respect to any action by third-parties, which are not considered collection activities under the FDCPA.  Trott argues that it was not required to independently investigate the merit of the debt either.

The FDCPA, 15 U.S.C. § 1601 *et seq.,* governs debt collectors' actions.  The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to promote actions to protect consumers against debt collection abuses.  *Id.* at § 1692(e); *Grden v. Leikin Inger & Winters, PC*, 643 F.3d 169, 172 (6th Cir. 2011).  Violators of the FDCPA are subject to actual damages, statutory damages and attorneys' fees.  15 U.S.C. § 1692k.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, and may not falsely represent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e. Section 1692g of the FDCPA provides as follows.

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.

*Id.* at § 1692g(b). A debt collector does not violate the FDCPA by failing to verify the debt where the debt collector ceases collection activities after the receipt of a consumer's dispute letter. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *see also Stephens v. Troy Capital, LLC*, No. 3:14-CV-1972, 2015 WL 2078895, at *4 (M.D. Tenn. May 4, 2015) ("Section 1692g(b) does not require a debt collector to respond to a request for verification, only that it cease collection activities after it receives a request until it provides a response.")

The plain language of the FDCPA requires a debt collector to cease collection of the debt once the consumer requests verification of the debt. Scott concedes in his Response that Trott received his letter disputing the validity of the debt (dated October 8, 2016) on or about October 11, 2016, and that Trott stopped collection efforts after Scott filed for bankruptcy on November 4, 2016. (Doc # 33, Pg ID 527, 533) It is undisputed that collection efforts have now ceased and that

the foreclosure sale of Scott's home has been cancelled. Under these circumstances, Trott need not verify the debt unless Trott seeks to resume collection activities.

Scott specifically takes issue with the listing of his home in the newspaper on October 14, 21, and 28, 2016. Scott has not shown, however, that these were collection activities on the part of Trott. Scott has failed to indicate any action by Trott to foreclose on his home after Scott disputed the debt. Trott notes that the foreclosure notices were sent to a third party for publication and posting, with the first of four publications being set for October 7, 2016—before Trott received Scott's dispute letter.

Under Michigan law, publication of the notice of foreclosure for four consecutive weeks is a necessary step to foreclose a mortgage by advertisement. *See* M.C.L. § 600.3208. "The FDCPA does not extinguish a creditor's right to secure a debt under state law, but instead merely prohibits deceptive collection techniques." *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1013 (11th Cir. 2004) (holding that the FDCPA does not preclude debt collector from contemporaneously filing a lien with a state Clerk at the same time it sends letter of demand to consumer, so long as initial filing of a lien is permitted by state law, even if consumer did not first have opportunity to dispute or verify the debt).

Because publishing a notice of foreclosure is a legally permissible method of foreclosing a mortgage under Michigan law, without identification of something more, it cannot be deceptive. Additionally, Trott was not required to take any positive action to stop the third party from publishing the notice of foreclosure after it received Scott's dispute letter. *See id.* (further holding that the FDCPA does not create a duty on a debt collector to take positive action to prevent, even if the debt collector is able to, a Clerk from recording a lien after verification has been requested).

Scott also takes issue with Trott's failure to independently investigate the amount of the debt. He claims that Trott illegally demanded $180,131.05 when that figure was incorrect. Scott asserts that after receipt of his dispute letter, Trott should have contacted lawyers at another firm (not representing either Scott or BANA) who had allegedly been previously court ordered to turn certain checks over to BANA.

Section 1692c of the FDCPA provides as follows.

Except as provided in section 1692b of this title [for the purpose of acquiring location information about the consumer], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*Id.* at § 1692c(b).

Trott asserts, and the Court agrees, that this law firm that Scott claims Trott should have contacted would have little or no knowledge of the current status of the loan, whether the checks were returned or lost, etc.  Indeed, Exhibit D attached to Scott's Complaint is a letter from this law firm, stating as follows.

> Please note that Maddin Hauser is no longer involved in this matter. Maddin Hauser did not defend your appeal to the Sixth Circuit, and my firm is not involved in any foreclosure proceeding that may be taking place right now.  It appears based on your message that Trott Law may have been retained for this purpose.
>
> With that said, we have checked our records in response to your message.  Any and all checks that my office received from you were either returned to you or forwarded on to our client.  My firm is not in possession of any checks or funds delivered by you.

(Doc # 1, Pg ID 36)  Trott was not required to contact third-party Maddin Hauser to verify the debt, and under the plain terms of Section 1692c, Trott was not permitted to contact third-party Maddin Hauser without directly receiving consent from Scott, which his dispute letter did not provide.  *See* Doc # 1, Pg ID 34.

The Court concludes that Scott has failed to state an FDCPA claim, and Count 1 is dismissed.

## C.    Violation of the Real Estate Settlement Procedures Act (Count 2)

Scott alleges that Trott violated the Real Estate Settlement Procedures Act ("RESPA") because Trott failed to respond to Scott's letter disputing the debt, failed to verify the debt, and illegally slated his home to be sold.

Trott argues that this claim should be dismissed because Trott is not a mortgage servicer under RESPA, and RESPA does not apply to the foreclosure process.

RESPA provides that a borrower may submit a qualified written request ("QWR") to its loan servicer for information relating to the servicing of the loan. 12 U.S.C. § 2605(e)(1)(A). The loan servicer must then provide a written response acknowledging receipt within five days. *Id.* Section 2605(e)(2) then requires the loan servicer to transmit or provide a response to a borrower's inquiry within 30 days. The loan servicer is to conduct an investigation and then, if applicable: (1) make corrections to the account, (2) provide a statement of why the loan servicer believes the account is correct, (3) provide contact information that the borrower may call for assistance, (4) provide information requested, or (5) provide an explanation of why the information requested is unavailable or cannot be provided by the loan servicer. *Id.* at § 2605(e)(2)(A)-(C). A servicer may choose a method of response; there is no duty to comply with all of the aforementioned methods. *Weinert v. GMAC*, 2009 WL 3190420 at *8 (E.D. Mich. Sept. 29, 2009).

Scott does not allege that Trott is the loan servicer. Scott argues that Trott is liable under RESPA because it represents the loan servicer, BANA. Correspondence from Trott to Scott clearly identifies Trott as a debt collector and

BANA as the servicer of the debt. (Doc # 1, Pg ID 30) The Court finds that RESPA does not apply to Trott, a debt collector and not a loan servicer.

The Court concludes that Scott has failed to state a RESPA claim against Trott, and Count 2 is dismissed.

### D.     Violation of M.C.L. § 339.918(e)(2) (Count 3)

Scott also alleges that Trott violated M.C.L. § 339.918(e)(2), which includes language that is substantially equivalent to the FDCPA language quoted above.

Trott argues that this claim should be dismissed because Trott is not a "collection agency" under M.C.L. § 339.901, and therefore, M.C.L. § 339.918(e)(2) does not apply to Trott.

M.C.L. § 339.901 states as follows in defining "collection agency."

> Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to the following: . . . An attorney who is handling a claim or collection on behalf of a client and in the attorney's own name.

M.C.L. § 339.901(b). *See e.g., Walker v. Shermeta, Adams, & Von Allmen, P.C.*, No. 13-14932, 2014 WL 11309742, at *5 (E.D. Mich. Apr. 25, 2014), *aff'd and remanded sub nom. Walker v. Shermeta, Adams, Von Allmen, PC*, 623 F. App'x 764 (6th Cir. 2015) (finding that the Michigan Occupational Code expressly excludes law firms from the definition of "collection agency").

Under the plain terms of M.C.L. § 339.901, Trott is not a collection agency, and Scott does not allege in his Complaint that Trott is a collection agency. Accordingly, M.C.L. § 339.918(e)(2) does not apply to Trott.

The Court concludes that Scott has failed to state a claim under M.C.L. § 339.918(e)(2), and Count 3 is dismissed.

### E.    Fraud and Misrepresentation (Count 4)

Scott alleges that Trott committed fraud because Trott failed to contact other attorneys that had previously represented BANA to confirm all payments by Scott to BANA and verify the debt, and because Trott misrepresented the total amount that Scott owed.

Trott argues that this claim should be dismissed because Scott's Complaint is devoid of the factual allegations necessary to comply with Rule 9 of the Federal Rules of Civil Procedure.

Under Michigan law, the elements constituting actionable fraud are:

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (quotations and citation omitted).  To plead a case of fraud, the plaintiff must be specific.  Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir.

2010).  The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotations and citation omitted).  In addition, a party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotations and citations omitted).

Liberally reviewing the Complaint, most of Scott's allegations are vague and conclusory.  While Scott alleges that he provided certain checks to attorneys at Maddin Hauser representing BANA in his previous action, and that "all of the missing checks were given to the Attorneys," Scott does not allege how much he has paid to BANA or how much is "missing."  While Scott generally asserts that he is "current," it is not clear from the record what that means, and Scott does not specifically allege that he is not in default or that he has made all of the required payments.[2]  The Complaint does not allege sufficient facts from which to infer that Trott made statements it knew to be false, or made them recklessly.  There are no

---

[2] The Court notes that JPMorgan Chase's response to Trott's First Subpoena, dated February 23, 2017, indicates that no checks written by Scott to BANA were successfully negotiated for the previous 15 months.  (Doc # 35-7)

allegations specifying how Scott acted in reliance upon any alleged fraudulent statement by Trott. In short, Scott has not alleged sufficient specific facts from which the Court could infer that Trott's actions were fraudulent. *See United States, ex rel. Branhan v. Mercy Health Sys. Of Southwest Ohio*, 188 F.3d 510 (6th Cir. 1999) (affirming dismissal of a complaint alleging improper billing because it "failed to allege a single specific incident in which improper billing occurred and the plaintiff never set forth the dates, times, or the names of individuals who engaged in the alleged improper billing").

The Court concludes that Scott has failed to state a fraud and misrepresentation claim because the allegations in the Complaint lack sufficient particularity, and Count 4 is dismissed.

### F.     Intentional Infliction of Emotional Distress (Count 5)

Scott alleges that he, together with his family, is suffering tremendous emotional strain due to Trott's actions in illegally taking and selling his home. Scott asserts that Trott's conduct is extreme, outrageous, and beyond the bounds of common human decency.

Trott argues that this claim should be dismissed because Scott's Complaint boils down to a pay history dispute with the lender, and Scott has failed to allege sufficient facts to show extreme and outrageous conduct on the part of Trott.

The Michigan Supreme Court has never formally recognized Intentional Infliction of Emotional Distress as a cause of action. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985)). Assuming such a claim does exist, a plaintiff must show the following elements to establish an Intentional Infliction of Emotional Distress claim: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Roberts*, 422 Mich. at 602 (quotations omitted). "The threshold for showing extreme and outrageous conduct is high." *VanVorous v. Burmiester*, 262 Mich. App. 467, 481 (2004). The Michigan Supreme Court has described "extreme and outrageous conduct" as follows.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Roberts*, 422 Mich. at 602-03 (quotations omitted).

Liberally reviewing the Complaint, Scott has failed to allege facts showing extreme and outrageous conduct on the part of Trott, especially in light of Trott's

limited role as the debt collector. *See Barnhart v. Nationstar Mortg., LLC*, No. 1:15-CV-627, 2016 WL 424699, at *3 (W.D. Mich. Feb. 4, 2016) (finding that, in Michigan, the extreme and outrageous conduct element "is not satisfied when the plaintiff essentially claims that the defendant breached contracts in various ways and foreclosed on his property").

The Court concludes that Scott has failed to state an intentional infliction of emotional distress claim, and Count 5 is dismissed.

### G.     Violation of Civil Rights under 42 U.S.C. § 1981 (Count 6)

Scott alleges that Trott's conduct was related to his race and that it violated his civil and constitutional rights.

Trott argues that Scott's allegations are conclusory, and that Scott has failed to allege any facts showing any of the elements required to sustain a cause of action for discrimination.

To state a claim for relief under Section 1981, the plaintiff must allege facts showing that:  (1) he is a member of a racial minority; (2) he sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) he was denied the right to enter into or enjoy the benefits and privileges of the contractual relationship in that (a) the plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) the plaintiff received services in a markedly hostile manner and in a manner which a reasonable

person would find objectively discriminatory.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).

Scott does not allege that he sought to make or enforce a contract for services ordinarily provided by Trott.  His conclusory allegation that he was discriminated against because is African American, without more, fails to give fair notice of his claim.

The Court concludes that Scott has failed to state a racial discrimination claim under 42 U.S.C. § 1981, and Count 6 is dismissed.

### H.     Federal Trade Commission Act

While not included as a count in the Complaint, the Complaint does cite to the Federal Trade Commission Act ("FTCA").  The FTCA does not provide a private cause of action to individuals.  *Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001).  The Court dismisses any FTCA claim.

## III.   OTHER OUTSTANDING MOTIONS

Given that the Court dismisses this action, and given that the foreclosure sale of the mortgaged premises has been canceled, the Court enters an order mooting the following motions:

1.     #4, 10/25/16:  Motion for Temporary Injunction by Plaintiff;

2.     #34, 03/07/17:  Motion to Quash Subpoena by Plaintiff;

3.     #35, 03/13/17:  Second Motion to Compel Discovery / Enforce Order and for Sanctions by Defendant;

4.    #36, 03/13/17:  Motion to Extend Discovery by Plaintiff;

5.    #42, 03/27/17:  Motion to Compel by Plaintiff;

6.    #45, 03/27/17:  Motion for Failure to Cooperate and Answer
        Subpoena by Plaintiff;

7.    #46, 03/27/17:  Motion for Permission for Joiner of Parties by
        Plaintiff; and

8.    #51, 04/10/17:  Motion to Strike Plaintiff's Motion for Joiner [sic] of
        Parties by Defendant.

## IV.    CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Trott Law, P.C.'s Motion for

Summary Judgment / Dismissal (Doc # 18) is GRANTED, and this action is

DISMISSED.

IT IS FURTHER ORDERED that the following motions are MOOT:

1.    #4, 10/25/16:  Motion for Temporary Injunction by Plaintiff;

2.    #34, 03/07/17:  Motion to Quash Subpoena by Plaintiff;

3.    #35, 03/13/17:  Second Motion to Compel Discovery / Enforce Order
        and for Sanctions by Defendant;

4.    #36, 03/13/17:  Motion to Extend Discovery by Plaintiff;

5.    #42, 03/27/17:  Motion to Compel by Plaintiff;

6.    #45, 03/27/17:  Motion for Failure to Cooperate and Answer
        Subpoena by Plaintiff;

7.    #46, 03/27/17:  Motion for Permission for Joiner of Parties by
        Plaintiff; and

8.     #51, 04/10/17:  Motion to Strike Plaintiff's Motion for Joiner [sic] of
        Parties by Defendant.


                        S/Denise Page Hood
                        Denise Page Hood
                        Chief Judge, United States District Court


Dated:  June 22, 2017


I hereby certify that a copy of the foregoing document was served upon counsel of
record on June 22, 2017, by electronic and/or ordinary mail.


                        S/LaShawn R. Saulsberry
                        Case Manager